UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, proceeding under a pseudonym, | Civil Case No. |
| Plaintiff, | **COMPLAINT** |
| -against- | |
| HARVEY WEINSTEIN, | Jury Trial Demanded |
| Defendant. | |

Plaintiff, proceeding anonymously as Jane Doe, by and through the undersigned counsel, complains of Defendant Harvey Weinstein ("Weinstein") as follows:

## INTRODUCTION

1. Defendant Harvey Weinstein used his prominence in the entertainment industry to lure Plaintiff into sex acts with him by fraud and by force. Weinstein's fraud consisted of false promises of lucrative film roles for Plaintiff and help in advancing her acting career. As an aspiring actor, Plaintiff reasonably relied on Weinstein's false promises. After Weinstein caused Plaintiff to engage in sex acts with him, he would not fulfill those promises.

2. Plaintiff now sues Weinstein under the civil remedy provision of the Trafficking Victims Protection Act (the "TVPA"), 18 U.S.C. § 1591. Plaintiff seeks compensatory damages, punitive damages, and attorneys' fees against Weinstein.

## JURISDICTION

3. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this is a civil action arising under a federal statute, 18 U.S.C. § 1591.

## VENUE

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

5.      Defendant Harvey Weinstein is a film producer and co-founder of The Weinstein Company, a film-production company. This year, Weinstein was found guilty by a jury in New York City of a criminal sexual act in the first degree and rape in the third degree. Weinstein is currently incarcerated in the State of New York and awaiting extradition to Los Angeles, California where he faces separate rape and sexual assault charges.

6.      Plaintiff Jane Doe is a woman who resides in California.

## FACTS

**A.**    ***Weinstein Approaches Plaintiff in Cannes, France***

7.      Plaintiff first met Weinstein in Cannes, France in 2007 when she was 22 years old and was there to attend the Cannes Film Festival.

8.      Weinstein approached Plaintiff near his office. During their discussion, Weinstein learned that Plaintiff was an actor and said that he wanted to learn more about her career. Weinstein told his assistant, Victoria Parker, to arrange for a business meeting between Weinstein and Plaintiff. Later that day, this meeting took place at Weinstein's suite at the Majestic Hotel.

9.      When the time came for the meeting, Plaintiff met Weinstein and his assistant in his hotel suite. After the three of them briefly talked about Plaintiff's career, Weinstein's assistant left the suite.

10. Once alone, Weinstein grabbed Plaintiff and forced her into the bedroom of the suite. Weinstein then clutched Plaintiff and tried to force her into massaging him. When Plaintiff refused to massage him, Weinstein continued to grope Plaintiff and tried to take off her clothes. Plaintiff warded off Weinstein's forceful grabbing and clutching and left the suite before he could rape her.

11. After this incident, Weinstein continued to pester Plaintiff about meeting again to discuss her career. When Plaintiff agreed again to meet with him, Weinstein told Plaintiff that the meeting would take place in his hotel suite. Once in the suite, Weinstein forcefully undressed her against her will. When she would not engage in sex with him, he grabbed her by force and began to masturbate himself while groping her.

12. On another night - Plaintiff's last night in Cannes - Weinstein invited Plaintiff to meet some famous people in the film industry. Weinstein said that he wanted to introduce her to people in the film industry who could advance her career and make her a "star." Plaintiff agreed to attend because she believed that it would be a social evening with others. After Plaintiff and Weinstein met with various people in their hotel suites, Weinstein brought Plaintiff back to his hotel suite. Weinstein then used his considerable size and strength advantage to pin Plaintiff down and rape her.

13. Weinstein used fraud, physical force, and coercion to engage in sex acts with Plaintiff.

14. Plaintiff did not report the incidents because of the influence Weinstein held in the film industry and the harm that would befall her career if she told anyone about it.

### B. *Weinstein Pursues Plaintiff*

15. Soon after Plaintiff arrived in another city that she travelled to from Cannes, Weinstein called her and said that he would be travelling to that same city. Weinstein told Plaintiff that he was looking to "scout" new locations for a film he wanted to make. He also said that he wanted to talk to Plaintiff about her career and ways that he could get her starring roles.

16. Plaintiff tried to dissuade Weinstein from coming. She cautioned Weinstein that the paparazzi would track them and snap pictures of them together. Because Plaintiff was in a relationship at the time, she did not want this attention.

17. Weinstein persisted and flew to the city. When he was not allegedly scouting locations, he told Plaintiff that he wanted to see her to discuss helping her with her film career and finding her agents who could help her land roles in the United States. Weinstein praised Plaintiff's acting ability and proclaimed that she should be a film star.

18. Weinstein again told Plaintiff to meet in his hotel room to discuss her career. Once in the room, Weinstein again used fraud, physical force, and coercion to engage in sex acts with Plaintiff. As before, Plaintiff did not report the incident because of the power that Weinstein wielded in the film industry.

19. After these incidents, Weinstein did nothing to fulfill the promises he made to Plaintiff about advancing her career.

### C. *Weinstein Flies Plaintiff Around the World*

20. Later in 2007 and into 2008, Weinstein paid for Plaintiff to travel to meet him in Paris, France, Venice, Italy, Capri, Italy, and New York.

21. Weinstein would entice Plaintiff to travel to these locales under the pretext that he would, among other things, get her film parts in his films, make her a film star, introduce her to

important people in the film industry, and get her representation at powerful talent agencies. Weinstein touted the power he had in the film industry and said that he "could do anything" for Plaintiff's career. Weinstein boasted that he could make her a star like he did for other female stars.

22. But Weinstein's promises were false, and he made them with intent to defraud Plaintiff. Weinstein would use these fraudulent promises to bait Plaintiff to meet with him and then use physical force to cause Plaintiff to engage in sex acts with him.

### D. *Plaintiff Refuses Weinstein*

23. In 2009, Weinstein flew Plaintiff and her mother in his private jet to attend the Sundance Film Festival in Utah. Weinstein told Plaintiff that he wanted her to "meet his team" so that they could cast her in upcoming film roles.

24. Once she was at the festival, Weinstein demanded that Plaintiff have a "threesome" with him and another female. Plaintiff refused. Weinstein then began to threaten her that she would "regret" turning him down.

25. Because of Weinstein's continuing threats and hostility, Plaintiff decided to cut her stay in Utah short and planned to leave earlier. When Weinstein heard about this, he escalated his threats. Weinstein even sent a private car to return her to the hotel when she was at the airport. Plaintiff left town anyway.

### E. *Weinstein Punishes Plaintiff for Refusing Him*

26. After denying Weinstein at the Sundance Film Festival, Weinstein blocked Plaintiff from attending film events that she regularly attended.

27. Moreover, as a result of Weinstein's intervention, talent agents would not return her calls, and she stopped getting auditions for acting roles.

### F. *Weinstein Re-Approaches Plaintiff*

28. For the next two to three years, Weinstein did not contact Plaintiff. However, that changed in 2012.

29. By 2012, Plaintiff was living part-time in Los Angeles pursuing more acting opportunities.

30. Weinstein saw Plaintiff at an entertainment-related event and said that she "looked good." Weinstein told her that he was in Los Angeles and that he wanted to meet with her. He said that he wanted to talk about ways he could help her career such as hiring a prominent talent agent who would get her more acting roles.

31. Plaintiff agreed to meet Weinstein at his hotel. Once Weinstein had lured her into his room, Weinstein used fraud, physical force, and coercion to engage in sex acts with Plaintiff.

### G. *Plaintiff Travels to Toronto for the Toronto Film Festival*

32. In 2014, Plaintiff travelled to the Toronto Film festival to promote a film.

33. Weinstein was attending the same festival.

34. When Weinstein heard that Plaintiff was there, he expressed his anger that she did not tell him that she would be there. For several days, Weinstein badgered Plaintiff to meet with him. Plaintiff finally relented and agreed to meet him in the bar in his hotel lobby.

35. After a drink, Weinstein told Plaintiff that he wanted her to go to his hotel room so they could discuss how he could advance her career. Afraid of Weinstein sexually violating her again, Plaintiff said that she was in a relationship and did not want to go to his room. Weinstein said that he "wouldn't do anything" and only wanted to discuss ways to help her career. Plaintiff finally gave in, fearing what Weinstein would again do to her career.

36. Once in the hotel room, Weinstein began to force himself physically on Plaintiff. Weinstein again tried to force Plaintiff into sex acts against her will. When Plaintiff tried to fight him off, Weinstein used his strength and size to pin her down. After much effort, Plaintiff managed to leave the room without Weinstein sexually penetrating her.

**H.     *Los Angeles 2016***

37. In January 2016, Weinstein again contacted Plaintiff.

38. Weinstein told Plaintiff that he was in Los Angeles and wanted to see her so that he could discuss ways to help her career.

39. Plaintiff ignored him at first, but he continued to pester Plaintiff. Plaintiff eventually agreed to meet Weinstein at his hotel.

40. Weinstein said that the meeting would take place in his hotel room. Once she arrived, Weinstein used physical force to cause Plaintiff to engage in sex acts with him. Plaintiff's cries of "no" and "I don't want to do this" did not deter Weinstein.

41. After this incident, Plaintiff did not see Weinstein again in person.

42. Plaintiff did, however, receive threatening text messages from him accusing her of being "disloyal." These texts came after writer Ronan Farrow's expose in *The New Yorker* magazine about Weinstein's abuse of women and his tactics of using lawyers and private investigators to silence the women he abused.

## CLAIM FOR RELIEF

### VIOLATION OF 18 U.S.C. § 1591
### (Trafficking Victims Protection Act)

43. Plaintiff hereby repeats and incorporates by reference each and every allegation in the foregoing paragraphs as though fully set forth herein.

44. The statute of limitations for violating the TVPA is ten years. 15 U.S.C. § 1595.

45. Within the last ten years, Weinstein knowingly, in or affecting interstate or foreign commerce, recruited, enticed, and/or solicited Plaintiff, with knowledge that means of force, threats of force, fraud, or coercion (or a combination of them) would be used to cause Plaintiff to engage in sex acts with him on account of which anything of value would be given to or received by Plaintiff by:

    A. In 2012, Weinstein travelled to Los Angeles where he promised Plaintiff that he would help her land major acting roles, including help her sign with a prominent agency and talking to directors who were contemplating casting Plaintiff in their films. There, Weinstein used means of force, threats of force, fraud, or coercion (and a combination of them) to cause Plaintiff to engage in sex acts with him.

    B. In 2014, Weinstein travelled to Toronto for the Toronto Film Festival where he promised that he would help Plaintiff land acting jobs in the United States, including roles in films he produced. Weinstein again used means of force, threats of force, fraud, or coercion (and a combination of them) to cause Plaintiff to engage in sex acts with him.

    C. In 2016, Weinstein travelled to Los Angeles where he again promised to help Plaintiff land acting jobs. Once again, Weinstein used means of force, threats of force, fraud, or coercion (and a combination of them) to cause Plaintiff to engage in sex acts with him.

46. Weinstein "enticed" and "recruited" Plaintiff for purposes of the TVPA by his many promises to Plaintiff that he would use his considerable influence in the entertainment industry to land her acting roles and make her a "star."

47. Plaintiff, as an aspiring actor, reasonably relied on Weinstein's promises.

48. Weinstein did not follow through on his promises.

49. Weinstein made these promises to Plaintiff knowing that they were false and that they had no factual basis.

50. Besides the above-described fraud, Weinstein also used physical force on Plaintiff to engage in sex acts with him by forcefully clutching, tugging, and pulling her against her will.

51. Weinstein's "sex acts" with Plaintiff included vaginal intercourse, oral sex, and masturbation.

52. For Plaintiff, an aspiring actor, meeting with a famous film producer about her career and getting his help obtaining acting roles constitutes something "of value" under the TVPA.

53. Plaintiff sustained damages because of Weinstein's violations of the TVPA.

## PRAYER FOR RELIEF

Plaintiff requests that the Court:

1. Enter judgment in favor of Plaintiff;
2. Award Plaintiff compensatory damages in an amount to be determined at trial;
3. Award Plaintiff punitive damages in an amount to be determined at trial;
4. Award Plaintiff her attorneys' fees and costs; and
5. Grant to Plaintiff such other and further relief as Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

## DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all triable issues.

Dated: August 6, 2020

          NORRIS McLAUGHLIN, P.A.

          By: */s/ Steven J. Reed*
          Steven J. Reed, Esq.
          Sarah M. Bouskila, Esq.
          7 Times Square, 21st Floor
          New York, New York 10036
          sjreed@norris-law.com
          sbouskila@norris-law.com

          -and-

          BROZYNSKI & DALTON PC

          Bart Dalton, Esq. (Pro Hac Vice to be Filed)
          Texas State Bar No. 24043418
          bart@bdlegalgroup.com
          Katarzyna Brozynski, Esq. (Pro Hac Vice to be Filed)
          Texas State Bar No. 24036277
          kasia@bdlegalgroup.com
          5700 Tennyson Parkway, Suite 300
          Plano, Texas 75024
          (972) 371-0679

          *Attorneys for Plaintiff, Jane Doe*